Scott L Nielson (CA State Bar No. 262169)
**Law office of Scott L Nielson**
1106 Second Street, Ste 550
Encinitas, CA 92024
Telephone: (760) 334-8350
Email: scott@scottnielson.com

Attorney for Plaintiff Veni Group, LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VENI GROUP, LLC, a North Carolina Limited Liability Company,<br><br>        Plaintiff,<br><br>        vs.<br><br>TIKTOK, INC., BYTEDANCE, INC., ALIBABA GROUP USA, AMAZON.COM, INC., EBAY, INC., WHALECO, INC. for Temu.com, CONTEXTLOGIC INC., for Wish.com, EVERYMARKET Inc., PIXALSOFT, INC. for TrueGether.com, SHEIN, Inc., SHEIN TECHNOLOGY, LLC, RUMBLE GEM, LLC, Michelle Lam, MERCARI, Inc, POSHMARK, Inc., BONANZA, Inc. WALMART, Inc., DHGATE owner of DHGate.com, PARTS QUICK, LLC, TSRETE, Inc., TRUE CAPITAL SOLUTIONS, LLC, AMMIRATI BIZ, LLC, BALTIMORE REGIONAL HOUSING PARTNERSHIP, INC., WANT MART, LLC, JINGDONG E-COMMERCE, Ltd., BEAUTIFEYE LASH BOUTIQUE, LLC, CHANDRAS BLING BLING, LLC, Chandra Martinez, THE ORIGINAL ABBA BOOKS, LLC, BTK CONCESSIONS, LLC, KANSAMY, LLC, CHC PARTNERS, LLC, ESMT CONSULTING, LLC, FEMALE FINANCIAL, LLC, THE ZAZE, LLC, TESCA ENTERPRISE, LLC, Does 1-200, unknown fictious persons at the time of filing<br><br>        Defendants. | Case No.  8:24-cv-289<br><br>JURY TRIAL DEMANDED<br><br>**COMPLAINT FOR:**<br>1) **FEDERAL FALSE DESIGNATION OF ORIGIN;**<br>2) **FEDERAL TRADEMARK INFRINGEMENT;**<br>3) **COMMON LAW TRADEMARK INFRINGEMENT;**<br>4) **NEGLIGENCE;**<br>5) **CALIFORNIA STATE STRICT PRODUCT LIABILITY;**<br>6) **BREACH OF CONTRACT;**<br>7) **INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE;**<br>8) **CIVIL CONSPIRACY;**<br>9) **UNJUST ENRICHMENT;**<br>10) **CALIFORNIA STATE UNFAIR COMPETITION AND BUSINESS PRACTICES (B&P 17200).** |

For its claims against Defendants, Plaintiff VENI GROUP, LLC ("Plaintiff" or "Veni") alleges as follows:

## NATURE OF THE ACTION

1.      This is a civil action to enjoin and remedy: Lanham Act Violations of trade dress infringement, false designation, false advertising, infringement under 15 U.S.C. §1125(a); negligence, third-party beneficiary rights in contract, strict products liability, unfair competition, unjust enrichment and civil conspiracy of illegal and abusive acts.

2.      This action arises out of Defendant's past and continuous injurious conduct towards Plaintiff.  By this action, Plaintiff seeks to permanently put a stop to Defendant's illegal conduct based in trademark infringement and obtain compensation for the violations that have occurred thus far.

## THE PARTIES

3.      At all relevant times, VENI GROUP, LLC, was and is a lawfully organized Limited Liability Company with a principal place of business in Clemmons, North Carolina, in the State of North Carolina.

4.      Plaintiff is informed and believes, and based upon thereon alleges, that at all relevant times, Defendant ALIBABA GROUP USA (HOLDING LIMITED), was and is a Chinese multinational technology company headquartered in Hangzhou, China, with an operating address located in Santa Clara County, State of California.

5.      Plaintiff is informed and believes, and based upon thereon alleges, that at all relevant times, Defendant AMAZON.COM, INC, was and is a Washington Corporation with a principal place of business in King County, in the State of Washington.

6.      Plaintiff is informed and believes, and based upon thereon alleges, that at all relevant times, Defendant EBAY, INC, was and is a California Corporation with a principal place of business in Santa Clara County, in the State of California.

7.      Plaintiff is informed and believes, and based upon thereon alleges, that at all relevant times, Defendant BYTEDANCE, INC, was and is a California Corporation with a principal place of business in Los Angeles County, in the State of California.

8.      Plaintiff is informed and believes, and based upon thereon alleges, that at all relevant times, Defendant TIKTOK, INC, was and is a California Corporation with a principal place of business in Los Angeles County, in the State of California.

9.      Plaintiff is informed and believes, and based upon thereon alleges, that at all relevant times, Defendant WHALECO, INC (domain owner of TEMU.COM), was and is a Delaware Corporation with a principal place of business in Suffolk County, in the State of Massachusetts.

10.      Plaintiff is informed and believes, and based upon thereon alleges, that at all relevant times, Defendant CONTEXTLOGIC, INC (domain owner of WISH.COM), was and is a Delaware Corporation with a principal place of business in San Francisco County, in the State of California.

11.      Plaintiff is informed and believes, and based upon thereon alleges, that at all relevant times, Defendant EVERYMARKET, INC, was and is a Missouri Corporation with a principal place of business in St. Charles County, in the State of Missouri.

12.      Plaintiff is informed and believes, and based upon thereon alleges, that at all relevant times, Defendant PIXALSOFT, INC (domain owner of TrueGether.com), was and is a New York Corporation with a principal place of business in Nassau County, in the State of New York.

13.      Plaintiff is informed and believes, and based upon thereon alleges, that at all relevant times, Defendant SHEIN, INC (owner of SHEIN.COM), was and is a California Corporation with a principal place of business in Los Angeles County, in the State of California.

14.      Plaintiff is informed and believes, and based upon thereon alleges, that at all relevant times, Defendant SHEIN TECHNOLOGY, LLC (owner of SHEIN.COM), was and is a California Limited Liability Company with a principal place of business in Los Angeles County, in the State of California.

15.      Plaintiff is informed and believes, and based upon thereon alleges, that at all relevant times, Defendant RUMBLE GEM, LLC, was and is a California Limited Liability Company with a principal place of business in Orange County, in the State of California.

16.      Plaintiff is informed and believes, and based upon thereon alleges, that at all relevant times, Defendant MICHELLE LAM, was and is an individual residing in Santa Ana, Orange County, in the State of California.

17.     Plaintiff is informed and believes, and based upon thereon alleges, that at all relevant times, Defendant MERCARI, INC (domain owner of MERCARI.COM), was and is a California Corporation with a principal place of business in Santa Clara County, in the State of California.

18.     Plaintiff is informed and believes, and based upon thereon alleges, that at all relevant times, Defendant POSHMARK, INC (domain owner of POSHMARK.COM), was and is a California Corporation with a principal place of business in Santa Clara County, in the State of California.

19.     Plaintiff is informed and believes, and based upon thereon alleges, that at all relevant times, Defendant BONANZA, INC, was and is a Washington Corporation with a principal place of business in King County, in the State of Washington.

20.     Plaintiff is informed and believes, and based upon thereon alleges, that at all relevant times, Defendant WALMART, INC, was and is a Delaware Corporation with a principal place of business in Bentonville, in the State of Arkansas.

21.     Plaintiff is informed and believes, and based upon thereon alleges, that at all relevant times, Defendant DHGATE, was and is a multinational business located in Haidian District, at 8F Dimeng Commercial Building No. 3-2, Hua Yean Road, Beijing, China, postal code 100083.

22.     Plaintiff is informed and believes, and based upon thereon alleges, that at all relevant times, Defendant PARTS QUICK, LLC, was and is a New Jersey Limited Liability Company with a principal place of business in Hudson County, in the State of New Jersey.

23.     Plaintiff is informed and believes, and based upon thereon alleges, that at all relevant times, Defendant TSRETE, INC, was and is a New York Corporation with a principal place of business in Flushing, in the State of New York.

24.     Plaintiff is informed and believes, and based upon thereon alleges, that at all relevant times, Defendant TRUE CAPITAL SOLUTIONS, LLC, was and is a Florida Limited Liability Company with a principal place of business in Miami Gardens, in the state of Florida.

25.     Plaintiff is informed and believes, and based upon thereon alleges, that at all relevant times, Defendant AMMIRATI BIZ, LLC, was and is a California Limited Liability Company with a principal place of business in Los Angeles County, in the State of California.

26.     Plaintiff is informed and believes, and based upon thereon alleges, that at all relevant times, Defendant BALTIMORE REGIONAL HOUSING PARTNERSHIP, INC., was and is a Maryland Corporation with a principal place of business in Baltimore, in the State of Maryland.

27.     Plaintiff is informed and believes, and based upon thereon alleges, that at all relevant times, Defendant WANT MART, LLC, was and is a New Jersey Limited Liability Company with a principal place of business in Keasbey, in the State of New Jersey.

28.     Plaintiff is informed and believes, and based upon thereon alleges, that at all relevant times, Defendant JINGDONG E-COMMERCE Limited, was and is a Hong Kong Limited Business located in Hong Kong, at Flat/Room 1903 19/F, Lee Garden One, 33 Hysan Avenue Causeway Bay, Hong Kong, WC China, postal code 810002.

29.     Plaintiff is informed and believes, and based upon thereon alleges, that at all relevant times, Defendant BEAUTIFEYE LASH BOUTIQUE, LLC, was and is a Wisconsin Limited Liability Company with a principal place of business in Green Bay, in the State of Wisconsin.

30.     Plaintiff is informed and believes, and based upon thereon alleges, that at all relevant times, Defendant CHANDRAS BLING BLING, LLC, was and is an Arizona Limited Liability Company with a principal place of business in Surprise, in the State of Arizona.

31.     Plaintiff is informed and believes, and based upon thereon alleges, that at all relevant times, Defendant CHANDRA MARTINEZ, was and is an individual residing in Surprise, in the State of Arizona.

32.     Plaintiff is informed and believes, and based upon thereon alleges, that at all relevant times, Defendant THE ORIGINAL ABBA BOOKS, LLC, was and is a Nevada Limited Liability Company with a principal place of business in Las Vegas, in the State of Nevada.

33.     Plaintiff is informed and believes, and based upon thereon alleges, that at all relevant times, Defendant BTK CONCESSIONS, LLC, was and is a Louisiana Limited Liability Company with a principal place of business in New Orleans, in the State of Louisiana.

34.     Plaintiff is informed and believes, and based upon thereon alleges, that at all relevant times, Defendant KANSAMY, LLC, was and is a Colorado Limited Liability Company with a principal place of business in Aurora, in the State of Colorado.

35.     Plaintiff is informed and believes, and based upon thereon alleges, that at all relevant times, Defendant CHC PARTNERS, LLC, was and is a New Jersey Limited Liability Company with a principal place of business in Short Hills, in the State of New Jersey.

36.     Plaintiff is informed and believes, and based upon thereon alleges, that at all relevant times, Defendant ESMT CONSULTING, LLC, was and is a Florida Limited Liability Company with a principal place of business in Miami, in the State of Florida.

37.     Plaintiff is informed and believes, and based upon thereon alleges, that at all relevant times, Defendant FEMALE FINANCIAL, LLC, was and is a Georgia Limited Liability Company with a principal place of business in Duluth, in the State of Georgia.

38.     Plaintiff is informed and believes, and based upon thereon alleges, that at all relevant times, Defendant THE ZAZE, LLC, was and is a Connecticut Limited Liability Company with a principal place of business in Newington, in the State of Connecticut.

39.     Plaintiff is informed and believes, and based upon thereon alleges, that at all relevant times, Defendant TESCA ENTERPRISE, LLC, was and is a Texas Limited Liability Company with a principal place of business in Richmond, in the State of Texas.

40.     Plaintiff is ignorant of the true name and capacity of Defendant Does 1-200, and therefore Plaintiff sues these Defendants until their identity and capacity can be discovered. Because the true identity of many of the Doe Defendants is hidden or obfuscated by design by many of the named Defendants, Plaintiff is unable to determine their true legal names and capacity at the time of filing of this Complaint.  PLAINTIFF is informed and believes, and on that basis alleges, that each Doe Defendant sued under such fictitious name is in some manner responsible for the wrongs and the damages as alleged below, and in so acting, was functioning as the agent, servant, partner, joint venture, alter-ego, employee, proxy, managing agent, and principal of the co-Defendants, and in performing the actions mentioned below was acting, at least in part, within the course and scope of that authority as such agent, proxy, servant, partner, joint venture, employee, alter-ego, managing agent, and principal with the permission and consent of the co-Defendants. PLAINTIFF will amend the Complaint to allege the true names and capacities when the same are ascertained.by such fictious names as discovered and with the Court's permission.

41.     As used throughout this Complaint, Marketplace Defendants includes the following specific defendants: ALIBABA GROUP USA, AMAZON.COM, INC., EBAY, INC., BYTEDANCE, INC., TIKTOK, INC., WHALECO, INC., CONTEXTLOGIC INC., SHEIN, Inc., SHEIN TECHNOLOGY, LLC, WALMART, Inc., DHGATE owner of DHGate.com.

42.     As used throughout this Complaint, Marketplace Sellers includes the following specific defendants: EVERYMARKET Inc., PIXALSOFT, INC., RUMBLE GEM, LLC, Michelle Lam, MERCARI, Inc, POSHMARK, Inc., BONANZA, Inc., PARTS QUICK, LLC, TSRETE, Inc., TRUE CAPITAL SOLUTIONS, LLC, AMMIRATI BIZ, LLC, BALTIMORE REGIONAL HOUSING PARTNERSHIP, INC., WANT MART, LLC, JINGDONG E-COMMERCE, Ltd., BEAUTIFEYE LASH BOUTIQUE, LLC, CHANDRAS BLING BLING, LLC, Chandra Martinez, THE ORIGINAL ABBA BOOKS, LLC, BTK CONCESSIONS, LLC, KANSAMY, LLC, CHC PARTNERS, LLC, ESMT CONSULTING, LLC, FEMALE FINANCIAL, LLC, THE ZAZE, LLC, TESCA ENTERPRISE, LLC.

## **JURISDICTION AND VENUE**

43.     Jurisdiction and venue are proper in this Court, because at all relevant times, the Defendants does and/or did substantial business within the Central California District, in the state of California.  Plaintiff's claims arise under Federal Trademark Law and the Laws of the State of California.

44.     This Court has subject matter jurisdiction under 15 U.S.C. § 1121 (action arising under the Lanham Act); 28 U.S.C. § 1331 (federal question); 28 U.S.C. § 1338(a) (any Act of Congress relating to patents, copyrights, or trademarks); 28 U.S.C. § 1338(b) (action asserting claim of unfair competition joined with a substantial and related claim under the trademark laws); 28 U.S.C. § 1332(a)(1) (diversity jurisdiction); and 28 U.S.C. § 1367 (supplemental jurisdiction).

45.     This Court has personal jurisdiction over Defendant's because Defendant's have committed and continues to commit acts of infringement in violation of 15 U.S.C. §§ 1114 and 1125, and places infringing products into the stream of commerce, with the knowledge or understanding that such products are sold within the United States, in the State of California,

including in this District.  The acts by Defendant's have caused injury and continue to injure Plaintiff within this District.

46.     Upon information and belief, Defendant's derive substantial revenue from the sale of infringing products within this District, expects its actions to have consequences within this District, and derives substantial revenue from interstate and international commerce.

47.     This Court has jurisdiction under 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000 and all parties reside or their principal headquarters are within different states.

## GENERAL ALLEGATIONS

48.     Veni entered the cosmetics industry in 2014 by embracing innovative products, catchy trade dress, and straight forward marketing methods designed to expose customers to its unique products.

49.     Since 2014, Veni's team has expended tremendous effort to meet with vendors, suppliers, other third parties to ensure that its products meet exacting standards of quality and meet customers' expectations.

50.     Veni has invested substantial effort to engage with existing and prospective customers to deliver products that meet customers' expectations.  Including the quality of the product, design of the packaging, instructions on proper use, speed of delivery of product and reliable customer support.

51.     By following this approach, Veni's business has grown into a thriving business that provides thousands of customers Veni's products.  Veni's products are delivered through several commercial channels which include its own website, marketplace storefronts, reordering opportunities, and other e-commerce channels.

52.     Veni's distribution channels are well established and many of its brands have become somewhat famous and easily recognizable.

53.     Veni's product pricing has been stable for years, until recent infringement forced changes upon Veni's pricing structure

54.     From its inception, Veni's products and branding reflect unmistakable design and trade dress features throughout its products and packaging.  These design and trade dress features have been used consistently throughout the course of Veni's business operations.

55.     Veni has approximately 30 different branded products related to cosmetics, pharmaceuticals and fragrances.  While each branded product in Veni's portfolio is unique in its presentation with the related products, Veni's WOW! branding presents innovative packaging, distinctive design features, combined with well-known quality of the products Veni has become known for; resulting in an exciting combination of desirable products that consumers want.

56.     Veni deliberatively and carefully recognized creative achievements resulting in broad intellectual property protection, including trademark registrations to protect its innovative branding and trade dress.

57.     After hard years of meticulous effort to build brand trust and expose consumers to the quality goods that Veni has to offer, Veni's competitors in the marketplace have attempted to capitalize on Veni's effort by imitating Veni's innovative, elegant and distinctive branding and packaging.  In many cases, simply putting their name next to Veni's branded products and passing off their products based solely on Veni's branded products.

58.     Veni is the owner of the WOW! with design U.S. Federal Trademark as further described in Registration No. 5,716,039 at the U.S. Patent and Trademark Office and the design is shown here



Veni adopted and commenced use of the WOW! mark at least as early as April 4, 2014, in connection with Class 3 Goods including "Body creams; Cosmetics; Facial beauty masks; Lip

gloss; Lip liner; Lip stains; Non-medicated skin care preparations." ("WOW!").   The WOW! trademark is inherently distinctive as applied to its Goods.  By virtue of Veni's continuous use in commerce of its WOW! mark in connection with its Goods, Veni's mark has become well and favorably known to the relevant trade and public.  Veni has invested substantial time, effort and expense in extensive promotion throughout the United State of the Goods sold under its WOW! mark.  As a result, considerable goodwill has attached to the WOW! mark to VENI's benefit.  The WOW! mark is representative of Veni's reputation for designing and providing high quality Goods and symbolizes the goodwill of Veni, which is invaluable.

59.     Veni's WOW! products and trade dress include the branding, colorful design, and distinctive tube trade dress to help consumers recognize the source for the products



60.     As alleged below, Defendants have made and packaged confusingly similar or essentially identical products, in many cases copying Veni's prominent trademarks in their entirety with only an indication somewhere in the packaging (usually in a small font) to indicate a different seller resulting in widespread copyright, trademark and trade dress infringement.

61.     Defendants have caused and continue to cause confusion with Veni's WOW! brand in several ways including:

a.   Copying the entirety of the packaging with the exception of placing some extra detail, i.e. "ROMANTIC BEAR"

b. Placing the confusing goods into streams of commerce through a website offering, advertising, marketing, promotion, affiliate marketing or other commercial means.

c. Selling the confusing goods in direct competition with Veni, often at a discounted price.

d. Causing confusion in the marketplace between existing and prospective customers that desired Veni's goods based upon its WOW! branding.

62. Defendants caused and continue to cause confusion with Veni's WOW! brand by misusing, or using without Veni's permission substantially all of Veni's branding as it relates to the cosmetic lip line goods claimed

**MARKETPLACE DEFENDANTS**

63. Defendants created, developed and made a publicly available a marketplace.

64. The marketplace is primarily an internet-based service that is made available to consumers and the public through various interfaces including a uniform resource locator ("URL") commonly referred to as a website, or a mobile phone application, or a downloadable software application interface, or a non-downloadable software application interface.

65. The Marketplace Service is in the stream of commerce within the United States.

66. For the purposes of this Complaint, the Marketplace Service can operate in a several different fashions; all of which have an end result of a transaction involving Veni's WOW! branded goods and a consumer; however, the transaction is not with Veni for its branded goods. The most common Marketplace Service takes on the appearance of an on-line store front where the seller loads a digital representation of the products into the on-line digital catalog using pictures and descriptive wording. Consumers encountering the on-line store can select goods, drop them in a virtual shopping-cart and eventually "check-out" meaning order/pay for the items selected. Most of the Marketplace Defendants operate their Marketplace Service in this manner, or something very similar. Another common Market Service operates by allowing a seller to promote or otherwise advertise the unauthorized WOW! goods with some form of affiliated

identifier, where a prospective customer can "click" on a link, a video, or URL that takes them to a store front or shopping cart styled website, allowing that customer to purchase the goods similarly as described above.

67.     The Defendant that operates the Marketplace, fully controls the Marketplace Service.

68.     As it relates to the Defendants, the Marketplace Service allows, facilitates and encourages transactions where consumers buy and sellers sell various products.

69.     Marketplace Defendants operate their Marketplace Service with some form of key-word advertising, promotion, or other advertising to improve the ranking of an item listed for sale; or otherwise, direct consumers to a particular seller's catalog of goods available for sale.

70.     Defendants use indexing, ranking, or other scoring systems to publish results of products of interest for sale to consumers permitting the consumer to locate an item quickly and conveniently that they wish to purchase.  These results are pushed to consumers personal devices including personal computers, mobile phones, televisions, automobiles, and other personal computerized devices.  ("Choice Results").

71.     Defendants algorithmically push the consumer Choice Results to maximize the defendant's financial gain, rather than adhere to reasonable controls blocking counterfeit, illegal or trademark violating suppliers.

72.     Defendants pushing of Choice Results can and often do show infringing products side-by-side with the actual and lawful seller of the same branded product.  This behavior alone causes consumer confusion and injures Plaintiff.

73.     Defendants pushing of Choice Results can and often do show infringing products side-by-side with the actual and lawful seller with a lower price from that of the actual seller of the same product.  This behavior causes consumer confusion and injures Plaintiff.  This false designation forces Plaintiff to dramatically reduce its product price in order to make any sales causing further injury to Plaintiff.

74.     Defendants pushing of Choice Results can and often do show infringing products side-by-side with the actual seller with Marketplace Defendants own "off-brand" product at a lower price from the actual seller of the same product.  Defendant's algorithmic push of its own

off-brand product to Plaintiff's customers and prospective customers within a Marketplace Service controlled by Defendant in unethical, unfair and anticompetitive behavior.  This behavior further causes consumer confusion and injures Plaintiff as consumers are unsure if the off-branded product is related to the brand they have come to trust.  This behavior also allows Marketplace Defendants to manipulate pricing and product presentation to the consumer in a manner that benefits them by either selling their own off-brand version of the product, or to promote or rank higher other "sellers" that pay more in promotion and advertising revenue to the Marketplace Defendant.

75.     Marketplace Defendant benefits by pushing its Choice Results because it knows a willing buyer is interested in the product, the Marketplace Defendant uniquely benefits from this interest regardless of which final choice a consumer makes when concluding an actual transaction. Because the Marketplace Defendant does not stop listing counterfeit, or infringing sellers this uniquely propagates brand confusion and infringement.  In fact, whichever supplier eventually finalizes the sale through the marketplace, the Marketplace Defendant recognizes a benefit and profits from the transaction.

76.     Consumers within the defendant's Marketplace Service operate with a belief that the Marketplace Service is operating in an ethical, honest and lawful fashion.  Consumers are unaware that defendant's Marketplace Service does not provide adequate safeguards to protect the consumer from counterfeits, knock-offs, infringing products of defendant's own unfair business practices by providing its own "off-brand" products.

77.     Defendant's Marketplace Service is broken, compromised or operates in error as it needs constant updates because of programming bugs and errors related to issues as alleged in this complaint or other errors that compromise the merchantability, reliability, functionality and safety of the marketplace.

78.     Defendants' Marketplace Service has errors, programming bugs and omissions within it.

79.     Marketplace Service users agree to a terms of service ("TOS") agreement to use Defendant's Marketplace Service.

80.    The TOS includes a provision that indicates that sellers within the marketplace will not infringe the intellectual property rights of third parties.  Plaintiff is a third-party beneficiary of these contracts.  These TOS agreements indicate that the marketplace defendant is aware that sellers can in fact use their marketplace interface to list infringing products within their digital catalog of products for sale.

81.    In acknowledging that the Marketplace Service Defendants created is a potentially harmful product, that when placed in the stream of commerce, allows for large-scale infringement of lawful intellectual property owners rights, the Marketplace Service includes a process to allow complaints about third party violations of others intellectual property rights.

82.    Plaintiff has attempted to use this process to report infringing products and violations of the TOS on many occasions.

83.    Most complaints using marketplace defendants Intellectual Property Abuse Process go unanswered, unresolved, ignored or returned with no action.

84.    Marketplace Defendants know the identities of their Marketplace Sellers.  Because of this, Defendants can easily determine whether or not a Marketplace "seller" is the lawful owner of any registered trademark like the WOW! trademark.

85.    After a transaction is accomplished, Defendants reveal buyer information to sellers within their marketplace.

86.    After a transaction is accomplished, Defendants reveal seller information to buyers within their marketplace.

87.    Defendants do not reveal the identities of lawful trademark owners to consumers for confusingly similar or identical products.

88.    The public information regarding registered trademark ownership is publicly available to the Marketplace Defendant through the United States Patent and Trademark Office.

89.    Defendants are in control of and responsible for all aspects of any given transaction within their Marketplace Service, including:

      a.  Control of the process for a seller listing a product for sale

      b.  Allowing seller to show pictures of their products

c.  Allowing seller to describe their products

d.  Provide consumers with a product "listing" when they attempt to search or filter the available products within the marketplace

e.  Provide the capability for consumers to sort similar products based upon criteria like price, location, seller rating, and other factors, sometimes referred to as "trending".

f.  Allowing a Marketplace Seller to promote or advertise their products within the Marketplace Service.

g.  They do not provide a filter to sort on any given lawful trademark owner, like Plaintiff, so that consumers would be aware that any listing was considered non-infringing, counterfeit or a knock-off.

h.  Operate a shopping cart or similar service that allows consumers to place online goods into a digital storage bin.

i.  Operate the payment mechanism to allow consumers to "check-out" or pay for any items in their shopping cart.

j.  Charge fees or percentages of the sale to the Seller to advertise, market or after a sale is achieved.

k.  Responsible for distributing collected funds to the seller after a sale is achieved.

l.  Responsible for ensuring that sellers ship/deliver the products purchased by the consumer.

m. Provide a mechanism for returns or damaged goods

90.    As it relates to the Defendants and at all relevant times, the Defendants controlled and are responsible for the Marketplace Service as described herein.

91.    Defendants' Marketplace Service provides analytics and statistical data that allow other third parties to track trending sales data and other information ("Trending Data").

92.    It is this analytical Trending Data that allows the Marketplace Defendant to determine which products to create "off-brand" replicas to compete with the Marketplace Sellers within their own Marketplace Service. This behavior results in unfair competition and unethical

business practices, including violations of antitrust regulations.

93.     This Trending Data is also made available to the public and third-party competitors with no regard to safeguard the lawful trademark rights and interests like those of Veni, or who the brand or trademark owner is, as it relates to any product related sales.

94.     This Trending Data created by or made available by the Marketplace Defendants allows and encourages counterfeits, knock-offs and trademark infringement.

## **MARKETPLACE SELLERS**

95.     Marketplace Sellers use the internet in such a manner as to capitalize on confusion or infringement of Veni's WOW! branded products.  This behavior can present in several ways (not necessarily exclusive of each other), including: the seller has their own website or URL, they can create a virtual store within the Marketplace Service to sell goods, they can create a channel, handle or nickname that allows the Marketplace Seller to create promotional marketing and advertising material, often with an affiliated identifier, linking to some online mechanism permitting interested customers to purchase infringing goods either directly from the Marketplace Seller or giving them credit for the sale in some fashion.  Some of the larger sellers use combinations of the above-described behaviors to sell confusing goods and circumvent all lawful barriers to legal commerce.

96.     As it relates to Veni, after Veni's continuous efforts to build brand recognition and reputation, the Marketplace Sellers decided to knock-off, copy, infringe or counterfeit Veni's brands and sell them through the Marketplace Service controlled by the Marketplace Defendants. There are many examples of the infringing behavior by Marketplace Sellers using the Marketplace Service controlled by the Marketplace Defendants.

      a.  ROMANTIC BEAR Example – in this example, the exact same WOW! branded lip liner/gloss product is used, the top of the tube claims to be ROMANTIC BEAR.  It is obvious to anyone that Veni's WOW! brand and trade dress is copied in its entirety.

1
2
3
4
5
6
7
8
9



10    97.    Without investing any of the resources or innovation required in developing a strong

11  brand identity and intellectual property portfolio, the Marketplace Sellers reaped substantially all

12  the benefits of Veni's investment and goodwill in the market, by unlawfully using Veni's WOW!

13  brand on essentially identical goods.

14    98.    Marketplace Seller's use of Veni's product trade dress and its use of various

15  trademark brands that infringe Veni's trademarks rights has and is likely to cause confusion or

16  mistake, or to deceive consumers, purchasers, and others into thinking that the Marketplace Seller

17  products are Veni's product, or that they are sponsored by or affiliated with Veni, when they are

18  not.

19    99.    Veni's goodwill among consumers is closely tied to its position as quality provider

20  of uniquely valuable cosmetic related products.  The Marketplace Sellers flagrant, willful and

21  relentless copying of Veni's intellectual property rights in its cosmetic products not only allows

22  the Marketplace Seller's to benefit from Veni's investment, but it also threatens to diminish the

23  very important goodwill that Veni has cultivated with its products.  The value of such goodwill is

24  evident in part in the success that resulted from the Marketplace Seller's wrongful and illegal

25  appropriation after stealing Veni's aesthetic and branding strategies, some Marketplace Sellers

26  have made a fortune at Veni's expense.

27    100.    These Marketplace Sellers do not follow Veni's quality control standards, meaning

28

their confusingly infringing conduct damages Veni's WOW! brand in ways that are hard to calculate because of potential quality of the product being less than what customers and prospective customers have come to expect.

101. Further, this behavior has caused or will cause physical injury to Veni's WOW! customers. The WOW! customers are placing a long-lasting lip liner (like a lip stick) on their lips, without proper quality control, the goods can cause injury to the individual misusing the product because of inferior quality or failure to follow the instructions for proper care/use as Veni has developed over the years.

102. The Marketplace Sellers success in copying Veni's branding, trademarks and trade dress has caused immeasurable injury to Veni.

103. The Marketplace Sellers success has also caused or will cause harm or injury to Veni's customers as described herein.

104. Marketplace Defendants that operate the Marketplace Service have also benefitted from this illegal behavior as they recognize or realize a percentage of gain from every transaction.

105. The Marketplace Sellers intentionally chose to infringe Veni's trade dress, and trademark rights through the design, packaging and promotion of its cosmetic products, and it did so willfully to trade upon the goodwill that Veni has developed in connection with its high-quality branded products.

106. Veni is informed and believes that the Marketplace Sellers began producing, selling, and marketing its infringing and copycat products after Veni's first use of the WOW! trademark and trade dress.

107. Each of the Marketplace Sellers line of accused products embodies a combination of several elements of the Veni Product Trade Dress identified above, namely, a product configuration with a total image and overall appearance that is unique, including features such as size, shape, color or color combinations, texture, graphics, container and sales techniques.

## CIRCUMVENTION CYCLE

108. On occasions when the Marketplace Defendants responded to a trademark

infringement claim made by Veni, the Marketplace Seller circumvented the intent of the terms of service agreement, any purported safeguards in the Marketplace Service and continuously sold infringing products.

109.    A Marketplace Seller often does this circumvention behavior simply by setting up a separate account within the marketplace controlled by the Marketplace Defendants.  This starts a loop of abuse that benefits the Defendants to Veni's detriment.  Veni has to constantly monitor and seek out infringing sellers within the marketplace, report the seller, wait for the Marketplace Defendant to act, watch as the offending seller then establishes another marketplace storefront and repeats the same abuse.  ("Circumvention Cycle")

110.    Marketplace Defendants have no or have inadequate safeguards to protect legitimate and lawful trademark owners from brand confusion and infringement within its Marketplace Service.  To the extent any reported abuse is acted upon, the Circumvention Cycle of abuse demonstrates that the Marketplace Defendant is not committed to removing infringement behavior.

111.    The descried circumvention behavior benefits the Defendants to Veni's detriment.

112.    The circumvention is only made possible by the lack of proper safeguards, a correctly programmatically operating Marketplace Service and adequate supervision by the Defendants.

## **FIRST CAUSE OF ACTION**

### **TRADE DRESS INFRINGEMENT**

### **(Lanham Act Section 43(a), 15 U.S.C. §1125(a))**

113.    Plaintiff re-alleges and incorporates herein by reference the preceding paragraphs as though fully set forth herein.

114.    Veni is the owner of all right and title to the distinctive Veni Trade Dress.  The Veni Trade Dress, as embodied in Veni products, has acquired unique and identifiable meaning, and is not functional.

115.    In addition, the Veni Trade Dress, embodied in the packaging for the Veni products, is inherently distinctive and not functional.

116.    Based on extensive and consistent advertising, promotion and sales throughout the United States, the Veni Trade Dress enjoys distinctive brand awareness and meaning among consumers, identifying Veni as the source of these products.

117.    Veni's extensive promotion of the distinctive Veni Trade Dress has resulted in Veni's acquisition of valuable, legally protected rights in the Veni Trade Dress as well as considerable customer goodwill.

118.    Defendant's line of products has misappropriated the Veni Trade Dress by mimicking a combination of several elements of that trade dress as stated above.  The manufacture and distribution of Defendants products with packaging and product design features that mimic a combination of several elements of the Veni Trade Dress is likely to cause confusion, or to cause mistake, or to deceive the consumer as to the affiliation, connection or association of Defendant's with Veni, or as to the origin, sponsorship, or approval by Veni of Defendant's goods, services or commercial activities.

119.    Defendant's actions constitute unfair competition and false designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

120.    Defendants knew of Veni's Product Trade Dress when it designed its products, and has refused to change its product or packaging design in response to Veni's requests and demands. Accordingly, Defendant's infringement has been and continues to be intentional, willful and without regard to Veni's Product Trade Dress.

121.    As a direct and proximate result of Defendant's unlawful acts and practices, including those set forth above, Defendant's has caused, is causing, and unless immediately enjoined by this Court, will continue to cause immediate and irreparable harm to Veni, for which there is no adequate remedy at law, and for which it is entitled to injunctive relief.

122.    Veni is informed and believes, and on that basis alleges, that Defendants has gained profits by virtue of its infringement of the Veni Product Trade Dress.

123.    Veni also has sustained damages as a direct and proximate result of Defendant's infringement of the Veni Product Trade Dress in an amount to be proven at trial.

124.    Because Defendant's actions have been willful, Veni is entitled to treble its actual

damages or Defendant's profits, whichever is greater, and to an award of costs, and, this being an exceptional case, reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a).

## SECOND CAUSE OF ACTION

### FEDERAL TRADEMARK INFRINGEMENT

### (15 U.S.C. §1114)

125.    Plaintiff re-alleges and incorporates herein by reference the preceding paragraphs as though fully set forth herein.

126.    Veni owns multiple federal trademark registrations for the distinctive naming of several of its product lines, i.e., the Registered Trademarks.

127.    The Defendant's line of products or offerings has infringed the Registered Trademarks by using identical brand names in Defendant's product listings or throughout the Marketplace Service.

128.    Defendant's use of its infringing product lineup is likely to cause confusion, or to cause mistake, or to deceive the consumer as to the affiliation, connection or association of Defendant's with Veni, or as to the origin, sponsorship, or approval by Veni of Defendant's goods, services or commercial activities.

129.    Defendant's use of the infringing product lineup enables Defendant's to benefit unfairly from Veni's reputation and success, thereby giving Defendant's infringing products sales and commercial value they would not have otherwise.

130.    Before Defendant's first use of the infringing product lineup, Defendant's was aware of Veni's business and had either actual notice and knowledge, or constructive notice of, Veni's Registered Trademarks.

131.    Defendant's unauthorized use of the infringing product lineup is likely, if not certain, to deceive or to cause confusion or mistake among consumers as to the origin, sponsorship or approval of Defendant's products and/or to cause confusion or mistake as to any affiliation, connection or association between Veni and Defendant's, in violation of 15 U.S.C. § 1114(a).

132.    Veni is informed and believes, and on that basis alleges, that Defendant's

infringement of Veni's Registered Trademarks as described herein has been and continues to be intentional, willful and without regard to Veni's rights.

133.    Veni is informed and believes, and on that basis alleges, that Defendant's has gained profits by virtue of its infringement of Veni's Registered Trademarks.

134.    Veni will suffer and is suffering irreparable harm from Defendant's infringement of Registered Trademarks insofar as Veni's invaluable goodwill is being eroded by continuing infringement.

135.    Veni has no adequate remedy at law to compensate it for the loss of business reputation, customers, market position, confusion of potential customers and goodwill flowing from Defendant's infringing activities.  Pursuant to 15 U.S.C. § 1116, Veni is entitled to an injunction against Defendant's continuing infringement of Veni's Registered Trademarks.  Unless enjoined, Defendant's will continue its infringing conduct.

136.    Because Defendant's actions have been committed with intent to damage Veni and to confuse and deceive the public, Veni is entitled to treble its actual damages or Defendant's profits, whichever is greater, and to an award of costs and, this being an exceptional case, reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a) and § 1117(b).

## THIRD CAUSE OF ACTION

### COMMON LAW TRADEMARK INFRINGEMENT

137.    Plaintiff re-alleges and incorporates herein by reference the preceding paragraphs as though fully set forth herein.

138.    Veni has prior rights in Veni's Registered Trademarks and other unregistered marks, including WOW!.

139.    Defendant's product lineup and offering has infringed Veni's Registered Trademarks and unregistered common law trademark rights by using identical or similar names in Defendant's products.

140.    Defendant's use of its infringing naming convention is likely to cause confusion, or to cause mistake, or to deceive the consumer as to the affiliation, connection or association of

Defendant's with Veni, or as to the origin, sponsorship, or approval by Veni of Defendant's goods, services or commercial activities.

141.    Defendant's use of the infringing product lineup enables Defendant's to benefit unfairly from Veni's reputation and success, thereby giving Defendant's infringing products sales and commercial value they would not have otherwise.

142.    Prior to Defendant's first use of the infringing application icons, Defendant's was aware of Veni's business and had either actual notice and knowledge, or constructive notice of Veni's Registered Trademarks and other unregistered marks.

143.    Defendant's unauthorized use of the infringing product lineup is likely, if not certain, to deceive or to cause confusion or mistake among consumers as to the origin, sponsorship or approval of Defendant's product lineup and/or to cause confusion or mistake as to any affiliation, connection or association between Veni and Defendant's, in violation of 15 U.S.C. § 1114(a).

144.    Veni is informed and believes, and on that basis alleges, that Defendant's infringement of Veni's Registered Trademarks and unregistered marks, as described herein, has been and continues to be intentional, willful and without regard to Veni's rights in its Registered Trademarks and unregistered common law marks.

145.    Veni is informed and believes, and on that basis alleges, that Defendant's has gained profits by virtue of its infringement of Veni's Registered Trademarks and unregistered common law marks.

146.    Veni will suffer and is suffering irreparable harm from Defendant's infringement of Veni's Registered Trademarks and unregistered common law marks insofar as Veni's invaluable goodwill is being eroded by Defendant's continuing infringement.  Veni has no adequate remedy at law to compensate it for the loss of business reputation, customers, market position, confusion of potential customers and goodwill flowing from the Defendant's infringing activities.

147.    Veni is entitled to an injunction against Defendant's continuing infringement of Veni's Registered Trademarks and unregistered common law marks.   Unless enjoined, Defendant's will continue its infringing conduct.

148.    Because Defendant's actions have been committed with intent to damage Veni and

to confuse and deceive the public, Veni is entitled to treble its actual damages or Defendant's profits, whichever is greater, and to an award of costs and, this being an exceptional case, reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a) and § 1117(b).

## FOURTH CAUSE OF ACTION

### NEGLIGENCE

149.    Plaintiff re-alleges and incorporates herein by reference the preceding paragraphs as though fully set forth herein.

150.    Marketplace Defendants as suppliers of the marketplace service owed a duty to the general public, and to Veni in particular, to use reasonable care to ensure that each and every seller or storefront authorized to use the service was trained, lawful and otherwise using the marketplace service for its intended use and complied with the qualities and characteristics that they represented it had.  Including the duty owed to Veni through the TOS.

151.    Marketplace Sellers and DOES 1 to 200, as users/sellers of the marketplace service owed a duty to the general public, and to Veni in particular, to use reasonable care to ensure that their use of the marketplace service was lawful and otherwise using the marketplace service for its intended use and complied with the qualities and characteristics that they represented it had. This includes the duty acknowledged within the TOS.

152.    Marketplace Defendants, Marketplace Sellers and DOES 1 to 200, breached that duty when they permitted trademark infringement, knowing that, among other things, that the Marketplace Service, had a defect that did result in trademark infringement.

153.    Defendants as suppliers and users of a marketplace service designed for another for use, which it created, supplied and controlled, had a duty to use reasonable care to give warning of the conditions of the Marketplace Service or of facts which make it likely to be dangerous to consumers and the public that expect to use the Marketplace Service or be endangered by its probable use, when it had reason to know that the marketplace service defects permitted illegal use of trademark infringing products and that the public would not realize its dangerous condition.

154.    Defendants failed to fulfill their duty to warn.

155.   Defendants failed to supervise their usage and distribution of the Marketplace Service to the general public.

156.   Because the marketplace service would be or could be dangerous if negligently used, Defendants, had a duty to exercise reasonable care in the design, manufacture, testing and inspection of the marketplace service and in the testing and inspection of any component parts made by another so that the service could be safely used in the manner and for the purpose for which it was made.  Defendants failed to fulfill this duty such that the marketplace service allows trademark infringement and the circumvention cycle, among other things, a defect that did result in injury and trademark infringement.

157.   Plaintiff is informed and believes and thereon alleges that Defendants, had reason to know that the Marketplace Service was likely to be dangerously defective, in that it had the potential to infringe or otherwise cause intellectual property injury, possibly causing physical injury to Veni's customers and prospective customers for inferior products and therefore had a duty to use reasonable care to inspect and test the marketplace service before selling it to members of the public, including the Marketplace Sellers.  Said Defendants failed to fulfill this duty, and the lack of such testing and inspection proximately and directly caused the injuries and damages to Plaintiff, referenced below.

158.   As a direct and proximate result of the negligence, carelessness, recklessness, wantonness and unlawfulness of Defendants, and each of them, and the resulting marketplace service failure, as aforesaid, Veni sustained severe and serious injury to its trademark property rights and interests, all to Plaintiff's damage in a sum within the jurisdiction of this Court and to be shown according to proof.

159.   As a further and proximate result of said conduct of Defendants, and each of them, Veni was compelled to incur expenses to protect its intellectual property as well as protect consumers of its products from possible harm or injury from counterfeit products introduced by the Marketplace Service.  Plaintiff is informed and believes, and thereon alleges, that further services of said nature will be required by Plaintiff for a yet to be determined period in the future, all to the damage of Plaintiff in an amount to be shown according to proof.

160.     At the time of the injury, and as a continuing harm, as aforesaid, Veni's trademark interests and rights had unique value and earning capability.  By reason of the foregoing, Veni's trademark rights have been damaged and Veni is informed and believes, and upon such information and belief, alleges that the damage to its trademark rights and interests have suffered an incalculable injury as of the filing of this Complaint and into the foreseeable future, all to Plaintiff's damage in an amount to be shown according to proof.

**FIFTH CAUSE OF ACTION**

**CALIFORNIA STATE STRICT PRODUCT LIABILITY**

161.     Plaintiff re-alleges and incorporates herein by reference the preceding paragraphs as though fully set forth herein.

162.     Marketplace Defendants, manufactured, designed, assembled, compounded, tested or failed to test, inspected or failed to inspect, packaged, labeled, fabricated, constructed, analyzed, distributed, serviced, merchandised, recommended, warned, instructed, advertised, promoted, marketed, leased, and/or sold a certain marketplace service, which was intended by the Marketplace Defendants', to be used as a Marketplace Service to conduct commerce between buyers and sellers and for other related activities.

163.     Marketplace Defendants, knew that the previously-described marketplace service was to be used without inspection for defects by consumers, Marketplace Sellers and the general public.

164.     The previously-described marketplace service was unsafe for its intended use because of defects in its manufacture, design, testing, warnings, installation components and constituents, so that it could not safely serve its purpose, but would instead expose the users of said service to injury because of the failure of Marketplace Defendants, to properly guard, protect, design, manufacture, instruct, or warn the users of the previously-described marketplace service from these defective propensities, including unlawful trademark infringement and exposure to infringing products that can and do cause physical harm to the consumer.

165.     Marketplace Defendants were aware that the marketplace service contained defects

that allowed Marketplace Sellers to misuse, abuse or otherwise conduct illegal activity as it relates to Veni's trademark property rights and interests.

166.     Marketplace Defendants were aware of the Circumvention Cycle of abuse directly attributed to the defects in the marketplace service provided by Marketplace Defendants.

167.     Marketplace Defendants claim to care about intellectual property rights, but have introduced into the streams of commerce, products and services that cause injury and harm to intellectual property rights of Veni and place Veni's customers and prospective customers at risk from inferior counterfeit goods.

168.     Marketplace Defendants owed a duty to ensure that their marketplace service operated in a fashion that did not violate Veni's trademark property rights and interests and did not pose a risk of injury to Veni's customers and prospective customers.

169.     Plaintiff was either not aware of or when it became aware of reported infringing activities to the Marketplace Defendants.

170.     Marketplace Defendants, sold, licensed, leased or otherwise transferred for valuable consideration to a third-party access to the previously-described marketplace service.

171.     The Marketplace Service inherently fails to provide adequate safeguards to protect Veni's trademark rights and interests; or to protect Veni's customers from physical injury caused by inferior counterfeit products.

172.     As a legal result of the above-described defective condition, Veni's trademark property interest was harmed.  As a result of such injuries, Veni has suffered general damages in an amount to be proven at the time of the trial of this action.

173.     As a further legal result of the above-described defective condition, Veni has incurred, and will continue to incur, expenses to repair, rehabilitate or otherwise protect its trademark property, goodwill and reputation.  The full amount of these expenses is not known to him at this time.  Veni prays leave to amend this complaint to state the amount when it becomes known to him.

174.     As a further legal result of the above-described defective condition, Veni has necessarily suffered a loss of earnings, and plaintiff is informed and believes, and thereon alleges,

that it will continue such a loss for an indefinite time in the future. Veni's trademark earning capacity has been greatly reduced, all to further special damages in amounts currently unknown. Veni prays leave to amend this Complaint to assert the true amounts when they are ascertained.

## SIXTH CAUSE OF ACTION

### BREACH OF CONTRACT

175.    Plaintiff re-alleges and incorporates herein by reference the preceding paragraphs as though fully set forth herein.

176.    This cause of action is brought against all Defendants.

177.    Plaintiff is a Third-Party Beneficiary as contemplated by the Marketplace Seller Terms of Service as such is authorized to pursue remedies at law for breach or anticipatory breach of those terms as they relate to the Defendants conduct. The terms of service entered into by all parties reflect contractual commitments and obligations.

178.    The contract at issue contains a warrant that a Marketplace Seller will respect the intellectual property rights of others. By selling infringing goods within the marketplace, the Marketplace Seller is in breach of contract.

179.    The Marketplace Defendants have pledged to respect the rights of intellectual property right holders. However, Marketplace Defendants have designed their marketplace to make it easy to violate those rights. Further, even when put on notice of violation, infringement and other unlawful conduct, Marketplace Defendants have not stopped the illegal conduct.

180.    Marketplace Defendants have the ability to block, take-down or otherwise stop the sale of counterfeit, infringing or illegal products, but chooses not to do so. Or, when it finally does take action to block infringing products, the circumvention cycle of abuse begins. This is a material breach of the contract as it relates to third-party beneficiaries

181.    Defendants, and each of them, have failed and refused, and continue to refuse, to tender their performance as required by the contract. This includes that defendant's breached the contract beginning as soon as an infringing product is placed within the marketplace, regardless if Veni ever reported the same.

182.    This breach of contract, has caused continuous and permanent harm to Veni.

183.    Defendant's failure and refusal to perform its obligations under the contract has directly damaged plaintiff through the loss of consumer sales of at least $2,000,000 or an amount to be proven at trial.

184.    Further, defendants' breach of contract has caused plaintiff to lose the benefit of the contract as it relates to lawful activities and sales within the marketplace.

185.    Plaintiff has suffered the cost of using the error prone marketplace systems to report counterfeits, infringement or other unlawful conduct.  Plaintiff has even received threats from the marketplace defendants to stop alerting them to infringement behavior at the risk of losing access to the marketplace.

186.    In addition, plaintiff has been damaged in an amount according to proof at trial for the lost opportunities, had it known that Defendants were not going to fulfill their obligations under the contract.


**SEVENTH CAUSE OF ACTION**

**Intentional Interference With Prospective Advantage**

187.    Plaintiff re-alleges and incorporates herein by reference the preceding paragraphs as though fully set forth herein.

188.    This cause of action is brought against all defendants.

189.    Defendants, and each of them, knew of or should have known of Plaintiff's ongoing business relationships and knew of Plaintiff's marketing efforts directed to potential clients either interested in Veni's products or returning to purchase Veni's products.  Defendants further knew of Plaintiff's previous marketing of other similar products.

190.    Because of defendants' breach of the contract with plaintiff, defendants, and each of them, intentionally interfered with plaintiff's prospective economic advantage from ongoing relationships and marketing efforts associated with Veni's products.

191.    As a result of Defendants Analytics and sales trend analysis, Defendants facilitated unfair competitive conduct by encouraging trade dress infringement, trademark infringement,

passing-off or unfair competition, resulting in Defendant's intentional interference with Veni's prospective economic advantage from existing and ongoing relationships and marketing efforts associated with Veni's products.

192.    As a direct result of defendants' actions and omissions, plaintiff has been damaged in an amount according to proof at trial.

193.    Defendants' actions were undertaken with fraud, malice or oppression, or with a conscious disregard of the rights of plaintiff, and, therefore, plaintiff is entitled to an award of exemplary and punitive damages against defendants, and each of them, in an amount according to proof.

194.    Veni will suffer and is suffering irreparable harm from Defendant's intentional interference with Veni's prospective advantage as it relates to Veni's Registered Trademarks and products insofar as Veni's invaluable goodwill is being eroded by Defendant's continuing misconduct.  Veni has no adequate remedy at law to compensate it for the loss of business reputation, customers, market position, confusion of potential customers and goodwill flowing from the Defendant's misconduct.

195.    Veni is entitled to an injunction against Defendant's continuing interference with Veni's prospective advantage.  Unless enjoined, Defendant's will continue its infringing conduct

## EIGHTH CAUSE OF ACTION

### CIVIL CONSPIRACY

196.    Plaintiff re-alleges and incorporates herein by reference the preceding paragraphs as though fully set forth herein.

197.    This cause of action is brought against all defendants.

198.    Marketplace Defendants are aware that the Marketplace Service permits illegal and abusive conduct.  The Marketplace Defendants benefit from the harmful and illegal conduct described within this Complaint.  The Marketplace Defendants are aware of all actions that occur by all users within their Marketplace Service.

199.    Marketplace Sellers know and understand that they can use the Marketplace Service

for illegal activity with no fear of consequence from Marketplace Defendants.  In the event a Marketplace Defendant does revoke access to the Marketplace Service, the Marketplace Seller simply sets up a new shop and continues the Circumvention Abuse described within this Complaint.

200.    The Trending Data information used by the Defendants is used for an unlawful purpose.

201.    Creating knock-offs or infringing products violates Veni's trademark rights and is an illegal harmful act.

202.    Providing "off-brand" goods that are essentially identical to Veni's products, particularly when the off-branded goods are determined because of the Trending Data analytics is a form of unfair competition and harms Veni.

203.    The Defendants all have an express and implied agreement between them, and that agreement does in fact contribute to the overall harm and injury suffered by Veni.

204.    The actions of all these parties contributes to unlawful and harmful purpose.

205.    The actions of Defendants causes harm to Veni as described herein.

206.    As a direct result of Defendants actions or inaction when action was necessary, Veni has been damaged in an amount according to proof at trial.

## NINTH CAUSE OF ACTION

### UNJUST ENRICHMENT

207.    Plaintiff re-alleges and incorporates herein by reference the preceding paragraphs as though fully set forth herein.

208.    This cause of action is brought against all defendants.

209.    Defendants, and each of them jointly and severally, through their wrongful conduct as described in this Complaint, have reaped substantial profits from the monies paid to them, belonging to plaintiff, and in so doing has caused plaintiff, to suffer substantial monetary losses, as well as emotional stress, reputational injury and property injury, all of which damages and costs were not only foreseeable but were the intended consequences of defendants' collective actions.

210.    Defendants have been unjustly enriched.

211.    Based on the facts as alleged herein and as proven at trial, in equity and good conscience, it would be unconscionable and otherwise unjust for defendants to enrich themselves at the expense of plaintiff.

212.    Veni seeks a worldwide accounting and disgorgement of all ill-gotten gains and profits resulting from the Defendants inequitable activities.

213.    As a proximate result of the unlawful conduct of defendant as herein alleged, plaintiff has incurred damages to be proven at trial, in at least the sum in excess of the jurisdictional amount of this Court, plus attorney's fees and costs, and additional amounts according to proof at time of trial, including interest, attorneys' fees and costs.

## TENTH CAUSE OF ACTION

### UNFAIR BUSINESS PRACTICES

**(Violation of § 17200 *et seq* of the California Business and Professions Code)**

214.    Plaintiff re-alleges and incorporates herein by reference the preceding paragraphs as though fully set forth herein.

215.    This cause of action is brought against all defendants.

216.    The business practice of defendants is unlawful and fraudulent and violates the law as alleged herein.  Further, defendants, and each of them, knew that their business practice were unlawful and fraudulent.

217.    Pursuant to Sections 17200 et seq. of the California Business and Professions Code, unfair business practices include any unlawful, unfair or fraudulent business practice.  The fraudulent and unlawful conduct of defendants as alleged herein is an unlawful and fraudulent practice within the provisions of Sections 17200 et seq. of the California Business and Professions Code, and, accordingly, constitutes a violation of Sections 17200 et seq. of the California Business and Professions Code.

218.    The acts of Defendant's described above constitute fraudulent and unlawful business practices as defined by California Business & Professions Code § 17200, et seq.

219.   Veni has valid and protectable prior rights in the Veni Product Trade Dress, and the Registered Trademarks.  The Veni Product Trade Dress identifies Veni as the source of its cosmetic and fragrance products.  The Veni Product Trade Dress is inherently distinctive, and, through Veni's long use, has come to be associated solely with Veni as the source of the products on which it is used.

220.   Defendant's use of its infringing trade dress is likely to cause confusion as to the source of Defendant's products and is likely to cause others to be confused or mistaken into believing that there is a relationship between Defendant's and Veni or that Defendant's products are affiliated with or sponsored by Veni.

221.   The above-described acts and practices by Defendant's are likely to mislead or deceive the general public and therefore constitute fraudulent business practices in violation of California Business & Professions Code §§ 17200, et seq.

222.   The above-described acts constitute unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and trademark and trade dress infringement under Section 32 of the Lanham Act, 15 U.S.C. § 1114, and are therefore unlawful acts in violation of California Business & Professions Code §§ 17200, et seq.

223.   Defendants acted willfully and intentionally in designing its infringing trade dress and product packaging, with full knowledge of Veni's prior rights in the distinctive Veni Product Trade Dress, Registered Trademarks, its common law trademarks, and with an intent to cause confusion or mistake or to deceive customers into believing that there is an affiliation between Defendant's and Veni or between Defendant's products and Veni's products.

224.   The unlawful and fraudulent business practices of Defendant's described above present a continuing threat to, and is meant to deceive members of, the public in that Defendant's desires to promote its products by wrongfully trading on the goodwill of the Veni Product Trade Dress, the Registered Trademarks and its common law trademarks.

225.   As a direct and proximate result of these acts, Defendant's has received, and will continue to profit from, the strength of the Veni Product Trade Dress, the Registered Marks and Veni's common law trademarks.

226.    As a direct and proximate result of Defendant's wrongful conduct, Veni has been injured in fact and has lost money and profits, and such harm will continue unless Defendant's acts are enjoined by the Court.

227.    Veni has no adequate remedy at law for Defendant's continuing violation of Veni's rights.

228.    Defendant's should be required to restore to Veni any and all profits earned as a result of their unlawful and fraudulent actions, or provide Veni with any other restitutionary relief as the Court deems appropriate.

## **PRAYER FOR RELIEF**

**WHEREFORE**, plaintiff prays for judgment against defendants, and each of them, as more fully set forth below.

1.   A judgment that Defendants have infringed one or more of Veni's trademarks;

2.   An order preliminarily and permanently enjoining Defendants and their officers, directors, agents, servants, employees, affiliates, attorneys, and all others acting in privity or in concert with them, and their parents, subsidiaries, divisions, successors and assigns, from directly or indirectly infringing the Veni Product Trade Dress, Registered Trademarks, unregistered common law trademarks, or using any other product or packaging design or designations similar to or likely to cause confusion with the Veni Product Trade Dress, Registered Trademarks, and unregistered common law trademarks; from passing off Defendant's products as being associated with and or sponsored or affiliated with Veni; from committing any other unfair business practices directed toward obtaining for themselves the business and customers of Veni; and from committing any other unfair business practices directed toward devaluing or diminishing the brand or business of Veni.

3.   Actual damages suffered by Veni as a result of Defendants' unlawful conduct, in an amount to be proven at trial, as well as prejudgment interest as authorized by law;

4.   Reasonable funds for future corrective advertising;

5.   An accounting of Defendants' profits pursuant to 15 U.S.C. § 1117;

6.     A judgment trebling any damages award pursuant to 15 U.S.C. § 1117;

7.     Punitive damages pursuant to California Civil Code § 3294;

8.     Restitutionary relief against Defendants and in favor of Veni, including disgorgement of wrongfully obtained profits and any other appropriate relief;

9.     Costs of suit and reasonable attorneys' fees, including, but not limited to, a finding that this case is exceptional and awarding attorneys' fees and costs pursuant to 35 U.S.C. § 285; and

10.    Any other remedy to which Veni may be entitled, including all remedies provided for in 15 U.S.C. § 1117, Cal. Bus. & Prof Code §§ 17200, et seq., 17500, et seq., and under any other California law.

Dated: February 12, 2024         By:   /Scott L Nielson/
                                       Scott L Nielson
                                       Attorney for Plaintiff Veni Group, LLC

- 35 -
Complaint